# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

JAIME JESUS VILLA, III,

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____/

Case No. 1:24-cv-00908-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Jaime Jesus Villa, III ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1981, has a college education, and previously worked as an electrician,

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.)  On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 19.)

drill press operator, and industrial cleaner.  (Administrative Record ("AR") 24–25, 43–44, 128, 903, 1042.)  Plaintiff filed a claim for DIB payments on January 30, 2019, alleging he became disabled on December 31, 2018, due to depression, psychosis, posttraumatic stress disorder (PTSD), degenerative disc disease, and hearing loss.  (AR 15, 128–29, 141, 1031.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on March 18, 2020, finding Plaintiff not disabled.  (AR 15–26.)  Plaintiff appealed the decision to the district court.  (AR 974–78.)  The parties thereafter voluntarily remanded the case for further proceedings.  (AR 1009–1010.)  On remand, the ALJ held another hearing and issued a new decision dated January 11, 2023, once again finding Plaintiff not disabled.  (AR 1031–44.)

Plaintiff filed exceptions to that decision with the Appeals Council (AR 1309–11), and on April 24, 2023, the Appeals Council remanded the matter to a new ALJ to conduct to take any further action needed to complete the record and issue a new written decision.  (AR 1053–54.)  The ALJ thereafter held a third hearing and issued a new decision finding Plaintiff not disabled for the third time.  (AR 892–905.)

**A.    Relevant Evidence of Record[3]**

**1.    Medical Evidence**

In August 2018, Plaintiff presented for a telehealth psychotherapy appointment.  (AR 627–32.)  He endorsed "mood cycling," "irritability on [a] monthly basis," and a racing mind "all the time."  (AR 628.)  On mental status examination, Plaintiff had a "good sense of humor," with a "anxious, depressed, congruent" mood; "linear and logical" thought process; "tight" associations; intact memory, attention, and concentration; and no paranoid ideation, delusions, or hallucinations.  (AR 629–30.)

Plaintiff spoke with his treating psychiatrist in January 2019 about his plans to obtain a master's degree in social work, how he "feels great" helping homeless veterans, and requested a letter of recommendation.  (AR 627.)  The psychiatrist noted that Plaintiff's "mood now sounds good" and that his schoolwork and experience in social work "have all been therapeutic for him."

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

(AR 627.)

In February 2019, Plaintiff presented for a telehealth psychotherapy appointment.  (AR 620–25.)  Plaintiff reported he was "doing good," and his medication (bupropion) is "helping a lot" and "leveled [him] out more."  (AR 621.)  Plaintiff further reported he had graduated college with his bachelor's degree, was accepted to a master's program, had a girlfriend, had recently obtained a job in marketing, and wished to work because it is "better for [him' mentally and physically."  (AR 622.)  His mental status examination showed an "anxious, depressed, congruent" mood; "linear and logical" thought process; "tight" associations; intact memory, attention, and concentration; and no paranoid ideation, delusions, or hallucinations.  (AR 623.)

Plaintiff sent his treating psychiatrist a message in July 2019 requesting the completion of disability paperwork.  (AR 510.)  In the message, Plaintiff reported that he had been taking medication (lithium), and it was "helping with the bipolarism but I still have nightmares and depression severely."  (AR 510.)

In January 2020, Plaintiff presented for a "Substance Use Disorder Program."  (AR 844–46.)  The provider observed Plaintiff was "alert and oriented," dressed appropriately and displayed appropriate mannerisms," his "affect was congruent with body language and statements during encounter," and he "appeared motivated and engaged in the discussion."  (AR 845.)  According to the provider, Plaintiff appeared "motivated for treatment" and "denied active suicidal or homicidal ideation."  (AR 845.)

Later that month, Plaintiff presented for a psychological evaluation with consultative examiner Roger A. Izzi, Ph.D.  (AR 882–885.)  In conducting the examination, Dr. Izzi reviewed "[p]rogress notes from the VA Hospital were reviewed," which showed his mood is "anxious and depressed" and thought process "linear and logical."  (AR 883.)  Plaintiff reported that he attends an online program, keeps medical appointments, does his own laundry, his girlfriend prepares his meals, and he occasionally sees friends.  (AR 882.)  Dr. Izzi observed that Plaintiff arrived on time for the evaluation and drove himself to the office.  (AR 884.)  On examination, Plaintiff's affect "seemed dysphoric."  (AR 884.)  His immediate recall was intact, but his delayed memory was limited.  (AR 884.)  Plaintiff had some difficulty spelling the word "world" backward.  (AR 884.)

He was able to perform multiplication problems.  (AR 884.)  There were no gross indications of psychosis, schizophrenia, or hallucinations.  (AR 884.)  Dr. Izzi noted that Plaintiff "presents with a very complex medical history, which would be best addressed by the appropriate medical specialist." (AR 885.)

### 2.    Opinion Evidence

Following his consultative examination in January 2020, Dr. Izzi opined that Plaintiff had moderate limitations in understanding, remembering, and carrying out simple and complex instructions; moderate limitations in his ability to make judgments on simple and complex work-related decisions; and marked limitations in his ability to interact appropriately with coworkers, supervisors, and the public and respond appropriately to usual work situations and changes in a routine work setting.  (AR 886–87.)  Dr. Izzi noted that his assessment was supported by his "mental status, record review, [and] clinical interview and history."  (AR 887.)

### 3.    Plaintiff's Statement

In June 2019, Plaintiff completed a function report.  (AR 310–17.)  He reported that he takes care of pets with help from his girlfriend, has no problems with personal care, prepares simple meals, performs household chores, drives a car but not by himself, shops in stores, and can handle his own finances.  (AR 311–13.)

## B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on August 7, 2019, and again on reconsideration on November 5, 2019.  (AR 15, 156–61, 165–71.)  Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on March 18, 2020, finding Plaintiff not disabled.  (AR 15–26.)  Plaintiff appealed the decision to the district court.  (AR 974–78.)  The parties thereafter voluntarily remanded the case for further proceedings.  (AR 1009–1010.)  On remand, the ALJ held another hearing and issued a new decision dated January 11, 2023, once again finding Plaintiff not disabled.  (AR 1031–44.)  Plaintiff filed exceptions to that decision with the Appeals Council (AR 1309–11), and on April 24, 2023, the Appeals Council remanded the matter to a new ALJ to conduct to take any further action needed to complete the record and issue a new written decision.  (AR 1053–54.)

At the hearings held on October 20, 2022, and April 4, 2024, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 917–32, 948–64.) Plaintiff testified at those hearings, *inter alia*, that while taking online college courses, he completed an internship at a mental health clinic, where he regularly interacted with the clinic's patients, including providing supervision services and maintaining treatment records. (AR 923–25, 951–54.) A vocational expert (VE) also testified at the hearings. (AR 932–37, 964–69.)

**C.     The ALJ's Decision**

In a decision dated May 13, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 892–905.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 894–905.) The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2020, and he had not engaged in substantial gainful activity from December 31, 2018, the alleged onset date, through the date last insured of March 31, 2020 (step one). (AR 895.) At step two, the ALJ found Plaintiff's following impairments to be severe: major depressive disorder, PTSD, degenerative disc disease, alcoholism, and a spinal disorder. (AR 895.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 896–98.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except he could lift
> and carry twenty-five pounds occasionally and ten pounds frequently. He could

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

stand for six hour[s] and walk for six hours in an eight-hour workday but had no limitations in sitting. He could frequently stoop, crouch, crawl, and climb ramps and stairs but could not climb ladders and scaffolds. He could frequently reach overhead. He could perform simple and routine tasks with only routine work-related decision making. He could occasionally do tasks that would require teamwork. He could follow simple instructions from supervisors. He could have occasional contact with the general public.

(AR 898–903.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 899.)

The ALJ determined that Plaintiff could not perform his past work (step four), but that, given his RFC, he retained the capacity to perform a significant number of other jobs in the local and national economies, including housekeeping cleaner, marker, and routing clerk (step five). (AR 904–905.) Ultimately, the ALJ concluded that Plaintiff was not disabled at any time from December 31, 2018, the alleged onset date, through March 31, 2020, the date last insured. (AR 905.)

Because Plaintiff did not file exceptions, and the Appeals Council did not assume jurisdiction on its own motion, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R § 404.984(d).

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the

following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in their assessment of the medical opinion of consultative examiner Dr. Izzi. (Doc. 12.)  The Commissioner responds that the ALJ's consideration of the medical opinion was proper and supported by substantial evidence. (Doc. 21.)  The Court finds no error in the ALJ's decision and will affirm.

### A.    Legal Standard

Plaintiff's claim for DIB is governed by the agency's regulations concerning how ALJs must evaluate medical opinions.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must

still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the

record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the consideration of the medical opinion of Dr. Izzi.

**B.    Analysis**

Dr. Izzi opined that Plaintiff had marked limitations in his ability to interact appropriately with coworkers, supervisors, and the public and to respond appropriately to usual work situations and changes in a routine work setting. (AR 886–87.) The ALJ determined that Dr. Izzi's opinion was "unpersuasive" because his examination did "not support" the marked limitations and it was "not consistent" with Plaintiff's treatment records, his testimony at the hearing, and his function report. (AR 902.) The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Izzi's opinion.

**1.    Supportability**

Regarding supportability, the ALJ observed that Dr. Izzi's opined marked limitations were not supported by his consultative examination documenting (1) "dysphoric mood, limited delayed memory, and difficulty with attention and concentration but normal findings otherwise with linear thought process, normal thought content, and intact immediate memory," (2) that Plaintiff "arrived on time for the evaluation and had no apparent cognitive functioning" impairment, and (3) Plaintiff's reports that he "has a girlfriend and sees his friends occasionally." (AR 902.) A lack of support by Dr. Izzi's own findings, substantiated by the record (*see* AR 882, 883, 884), was a proper consideration in evaluating the supportability of his opinion. *See, e.g., Trezona v. Comm'r of Soc. Sec.,* No. 1:21-cv-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal. May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01507-YY, 2022 WL 972408, at *7 (D. Or. Mar. 31, 2022).

Plaintiff does not dispute this evidence. Instead, he contends that the ALJ "conflates supportability and consistency into a single rationale," did not address "what Dr. Izzi utilized as his

reasons for assessing such marked limitations," and is "not qualified to interpret raw medical data in functional terms." (Doc. 12 at 8–9.)  These arguments are without merit.

First, although the ALJ did not use the term "supportability," the ALJ explained that the examination "did not support" the marked limitations found by Dr. Izzi, and substantial evidence exists in the record to uphold that finding.  *See Kessler v. O'Malley*, Case No. 2:23-cv-01416 AC, 2024 WL 1908078, at * 7 (E.D. Cal. May 1, 2024) (ALJ's "failure to use the words consistency and supportability" did not render their review of a medical opinion either legally erroneous or unsupported by substantial evidence).  Nor did the ALJ ignore Dr. Izzi's rationale for his opinion. Dr. Izzi stated that his assessment was based on the "mental status, record review, [and] clinical interview and history."  (AR 887.)  The ALJ expressly explained how Plaintiff's mental status (showing "normal thought content and intact immediate memory," punctuality to the examination, and "no apparent cognitive functioning" impairment), medical records (documenting "linear thought process"), and the clinical interview and history (reporting Plaintiff "has a girlfriend and sees his friends occasionally") undermined Dr. Izzi's opinion that Plaintiff is markedly limited in social interaction and the ability to respond appropriately to usual work situations and changes in a routine work setting.  (AR 902.)  Finally, the ALJ was entitled to review and interpret this evidence—none of it constituted "raw medical data."  *See, e.g., Mills v. Comm'r of Soc. Sec.,* No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC.").

### 2.    Consistency

As to consistency, the ALJ found Dr. Izzi's opinion that Plaintiff is markedly limited in social interaction and the ability to respond appropriately to usual work situations and changes in a routine work setting was inconsistent with the other evidence in the record, including treatment notes, Plaintiff's hearing testimony, and his function report.  (AR 902.)  These findings are supported by substantial evidence.  Mental status examination results documented stable mood (AR 510, 621, 627, 845); "linear and logical" thought process (AR 623, 629); intact memory, attention, and concentration (AR 623 630); and no paranoid ideation, delusions, or hallucinations (AR 623, 630,

845).[5]  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999) (The ALJ may accord an opinion less weight based upon substantial evidence, including "clinical evidence" that the ALJ finds to be conflicting.).  The ALJ found that Plaintiff's hearing testimony similarly undermined the opined marked limitations, as he testified that while taking online college courses, he completed an internship at a mental health clinic, where he regularly interacted with the clinic's patients, including providing supervision services and maintaining treatment records.  (*See* AR 923–25, 951–54.)  Finally, the ALJ noted the inconsistency between Dr. Izzi's opined marked limitations and Plaintiff's reported daily activities.  Plaintiff stated in his function report that he takes care of pets with help from his girlfriend, has no problems with personal care, prepares simple meals, performs household chores, drives a car but not by himself, shops in stores, and can handle his own finances.  (*See* AR 311–13.)  Such degree of daily activities belies marked limitations in Plaintiff's ability to interact socially and the ability to respond appropriately to usual work situations and changes in a routine work setting.  *See Morgan*, 169 F.3d at 601–603 (upholding ALJ decision discounting doctors' opinions based in part on the plaintiff's daily activities).  These explanations were, contrary to Plaintiff's contention (Doc. 12 at 13), adequate to "allow for meaningful review" of the ALJ's rejection of the marked limitations opined by Dr. Izzi.  *See Jerome J. C. v. O'Malley*, 759 F. Supp. 3d 1091, 1108 (E.D. Wash. 2024) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)).

Plaintiff further asserts that the ALJ "isolated portions" and "inaccurately characterized" the record to support their conclusion.  (Doc. 12 at 10–12.)  Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology.  *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts')).  The Court

---

[5] The ALJ also cited to a treatment note from March 2012, well before the alleged onset date in 2018.  (*See* AR 902 (citing AR 716).)  The Commissioner acknowledges that this record is not relevant to the disability determination (*see* Doc. 16 at 8), and the Court does not consider it in its review of the ALJ's decision.

does not concur with Plaintiff, however, that the ALJ committed this error.  Moreover, Plaintiff does not explain how this error would be consequential to the ALJ's nondisability determination.  *See Tommasetti*, 533 F.3d at 1038.  For example, Plaintiff faults the ALJ for "failing to identify that [Plaintiff] exhibited tight associations" during his mental status examinations. (Doc. 12 at 11.)  But exhibiting "tight associations" is indicative of a ***normal*** examination.  *See, e.g., Thoos v. Colvin*, No. 2:14-CV-02969-AC, 2016 WL 1244269, at \*4 (E.D. Cal. Mar. 30, 2016).  As such, the notation supports the Commissioner's—not Plaintiff's—position.  Plaintiff also points out that many of the treatment visits were conducted via "tele health" (Doc. 12 at 11) but does not indicate how that is material to the ALJ's decision.  *Cf. Makinzee S. v. O'Malley*, No. 4:23-CV-05152-EFS, 2024 WL 1716582, at \*6 (E.D. Wash. Apr. 22, 2024) ("no inference" that telehealth visits are "inherently less reliable").  Finally, Plaintiff asserts that the ALJ neglected to mention in the decision that Plaintiff's degrees were completed "online" and with "accommodations (Doc. 12 at 12), but, again, does not explain how this detracts from his testimony that he was "routinely . . . interacting with the patients of the clinic" during his eight-month internship while in college (AR 952).

## V.    CONCLUSION AND ORDER

In sum, while the medical record reflects that Plaintiff has some mental limitations, these have been accounted for in the RFC.  (*See* AR 900 (discussing mental impairments and limitations included in the RFC).)  It was reasonable for the ALJ to conclude that the further, severe restrictions opined by Dr. Izzi, were unpersuasive considering his own consultative examination and the record as a whole during the relevant period.[6]  The mere fact that the record could be interpreted differently is of no consequence, as the Court will not second guess the ALJ's reasonable interpretation—even if the record could give rise to inferences more favorable to Plaintiff.[7]  *See Molina*, 674 F.3d at 1110;

---

[6] Plaintiff further criticizes the ALJ for "failing to address" his request for a closed period of disability from December 31, 2018, to December 20, 2021 (a date after the date last insured of March 31, 2020). (Doc. 12 at 13.)  However, because substantial evidence supports the ALJ's finding of non-disability for the period of December 31, 2018, through March 31, 2020, Plaintiff was not entitled to the proposed period of closed disability. *See Alicia M. v. Comm'r of Soc. Sec.*, No. 2:21-CV-00433-REP, 2023 WL 2744135, at \*5 (D. Idaho Mar. 31, 2023) ("[T]he ALJ's conclusion that Plaintiff was not disabled during the relevant time period means that Plaintiff was not entitled to a closed period of disability at any time during that same period."). *See also Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) (A claimant can qualify for DIB "only if [their] disability begins by [their] date last insured.").

[7] Plaintiff also suggests that the ALJ did not "articulate clear and convincing reasons for rejecting the pain and limitation testimony." (Doc. 12 at 14.)  Other than this stray reference, devoid of any citation to the record, Plaintiff offers no argument to support his contention.  The Court declines to formulate one for him. *See, e.g., Indep. Towers*

*Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). *See also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

Accordingly, after consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**June 2, 2026**__                      ____/s/_ *Sheila K. Oberto*____
                                                          UNITED STATES MAGISTRATE JUDGE

---

*of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading [the plaintiff's] brief, one wonders if [the plaintiff], in its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . [j]udges are not like pigs, hunting for truffles buried in briefs.")). *See also Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ."); *Hibbs v. Dept. of Hum. Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (deeming a one-sentence argument "too undeveloped to be capable of assessment.").